1

2

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

9

UNITED STATES OF AMERICA,

10

Plaintiff,

11

vs.

12

MIGUEL RAMIREZ-ORTIZ,

13

Defendant.

14

15

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 20-CR-2667-GPC

**ORDER GRANTING IN PART AND**
**DENYING IN PART**
**DEFENDANT'S MOTION FOR**
**ACCESS TO GRAND JURY AND**
**JUROR RECORDS**

[ECF No. 32]

16

## **INTRODUCTION**

17

Defendant Miguel Ramirez-Ortiz ("Defendant" or "Ramirez") moves for

18

access to jury selection records and grand jury materials. ECF No. 32.  The

19

Government has filed its response in opposition, ECF No. 34, and Defendant filed

20

a reply. ECF No. No. 35.  Hearings were held on the motion on March 17 and

April 14, 2021.  Upon review of the pleadings and consideration of the arguments of counsel and the applicable law, Defendant's motions are GRANTED in part and DENIED in part.

**A. BACKGROUND**

On September 1, 2020, during the COVID-19 pandemic, a grand jury returned an indictment against Ramirez, charging him with possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841 (a)(1). The grand jury that returned the indictment was impaneled on November 19, 2019. On March 17, 2020, due to the COVID-19 pandemic, Chief Judge Larry Alan Burns issued an order suspending grand jury proceedings until April 16, 2020. (Order of the Chief Judge ("OCJ") #18.)  On April 15, 2020, Chief Judge Burns issued an order extending the suspension of grand jury proceedings until May 16, 2020. (OCJ #24.)  On May 14, 2020, Chief Judge Burns provided grand jurors a Letter with attached COVID-19 Precautions.  On May 15, 2020, Chief Judge Burns issued an order that permitted grand jury proceedings to resume starting on May 20, 2020, stating that the grand jury proceedings "may be conducted subject to limitations imposed by the Court in consultation with the United States Attorney's Office." (OCJ #27.)

On March 16, 2021, Defendant filed a motion seeking 23 categories of documents relying on the Jury Selection and Service Act of 1968 and the Sixth

1    Amendment. ECF No. 32.  As an initial matter, Mr. Ramirez-Ortiz declares that he

2    intends to use the records produced to "determine whether [there is] a potentially

3    meritorious jury challenge" under the JSSA. *Id*. at 7. However, it appears that the

4    motion is primarily prompted by concerns that the Clerk and Court would have

5    responded to the pandemic in ways that denied the Defendant his Sixth

6    Amendment right to a representative grand and petit jury. *Id*. at 1. He also seeks

7    records that are described as "ministerial" which bear on grand jury procedures

8    under Federal Rule of Criminal Procedure 6. *Id*.

9    **B. LEGAL STANDARD**

10       The Jury Selection and Service Act of 1968 (the "JSSA"), 28 U.S.C. §§

11   1861–67, implements "the policy of the United States that all litigants in Federal

12   courts entitled to trial by jury shall have the right to grand and petit juries selected

13   at random from a fair cross section of the community in the district or division

14   wherein the court convenes." *Id*. § 1861. This policy is consistent with the Sixth

15   Amendment guarantee of "a jury drawn from a fair cross section of the

16   community." *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1158-59 (9th

17   Cir. 2014). At the same time, a defendant is not entitled to a jury of any particular

18   composition. *United States v. Mitchell*, 502 F.3d 931, 951 (9th Cir. 2007) (quoting

19   *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975))

20       Under the JSSA, each district must "devise and place into operation a

3

written plan for random selection of grand and petit jurors" that complies with the

JSSA's procedural and substantive requirements. 28 U.S.C. § 1863(a). At the time

that the indictment was returned in this case, the Southern District of California

had implemented its Jury Plan in Civil Rule 83.10. See Civil Rule 83.10 Jury

Selection Plan (adopted November 19, 2019). The grand jury that indicted

Defendant was impaneled November 19, 2019 prior to the pandemic.  With respect

to the petit jury panel in this case, a jury trial has not been set and it is unknown

whether the Jury Plan will be affected, if at all.

As an enforcement mechanism, the JSSA permits a criminal defendant to

"move to dismiss the indictment or stay the proceedings against him on the ground

of substantial failure to comply with the provisions of [the JSSA] in selecting the

grand or petit jury." 28 U.S.C. § 1867(a). Such a motion may be brought to

establish either a violation of the basic fair cross section right, see *United States v.*

*Patel*, 996 F.2d 1229 (9th Cir. 1993), or a "substantial failure to comply" with

specific procedures required by the Act, *see United States v. Erickso*n, 75 F.3d

470, 477 (9th Cir. 1996). The JSSA bars access to "[t]he contents of records or

papers used by the jury commission or clerk in connection with the jury selection

process" while a case is pending, except "as may be necessary in the preparation or

presentation of a motion" by a party claiming a violation of the JSSA. 28 U.S.C. §

1867(f).  The defendant "shall be allowed to inspect, reproduce, and copy such

4

1  records or papers at all reasonable times during the preparation and pendency of

2  such a motion." *Id.*

3       The U.S. Supreme Court has observed that, under § 1867(f), "a litigant has

4  essentially an unqualified right" to inspect the jury selection materials described

5  therein. *Test v. United States*, 420 U.S. 28, 30 (1975). As the Supreme Court has

6  explained, "without inspection, a party almost invariably would be unable to

7  determine whether he has a potentially meritorious jury challenge." *Id.*; *see also*

8  *United States v. Beaty*, 465 F.2d 1376, 1382 (9th Cir. 1972) (holding that

9  defendant "had a right to make the inspection before he made a motion to

10  challenge the jury under § 1867(a)"). Moreover, access to the relevant records may

11  not be conditioned on a defendant first showing a probability of success on the

12  merits of the jury challenge. *Id.* at 1380–81; *see also United States v. Diaz*, 236

13  F.R.D. 470, 477 (N.D. Cal. 2006).  However, the JSSA "is not a license for

14  litigants to rummage at will through all jury-related records maintained by the

15  Clerk of Court." *United States v. Rice*, 489 F.Supp.2d 1312, 1316 (S.D. Ala.

16  2007)).

17       Defendants seek the requested documents in order to determine whether to

18  file a motion challenging the selection of the grand jury under 28 U.S.C. § 1867(a).

19  In this regard, he seeks to enforce his unqualified right to records or papers that

20  were used by the Clerk to determine the composition of the grand jury that indicted

20cr2667-GPC

him. In addition to relying on his unqualified right to records, Defendant also asserts that the COVID-19 pandemic "specifically, the different experiences of and reactions to the pandemic among distinctive groups, as well as changes in Southern District policy in response to the virus—has raised additional reason for concern." *Id*. at 8.

## C. DISCUSSION

### 1. Requests for Records

While the Government does not dispute that Defendant has an unqualified right to the "records or papers used by the ... clerk in connection with the jury selection process" in order to determine whether to file a § 1867(a) motion, the parties disagree as to what qualifies as records or papers used by the clerk in connection with the jury selection process. *See* Opp. at 3-4. The Court therefore will address each of the categories of requested documents and determine whether they are covered by the JSSA.

At the outset, the Court agrees with the parties that information sought to challenge the selection of the petit jury is premature. Accordingly, to the extent the requests below are granted, at this time they are granted only with respect to the selection of the grand jury that returned the indictment in Defendant's case.

1) The Juror Selection Plan for the Southern District of California currently in effect and at the time grand jurors were summoned in this case, or confirmation

6

20cr2667-GPC

that that plan has at all such times been codified in its entirety at Local Civil Rule 83.10.

ORDER: The Government does not oppose this request but notes that it is moot "because the current and former Jury Selection Plans are available on the Court's public website." Opp. at 9. However, it appears that the Court's public website only has available Jury Selection Plans dating back to General Order #147-H, which was adopted on October 15, 2020. The Court will therefore GRANT this request to the extent it relates to the previous Jury Selection Plan found in former Civil Rule 83.10 Jury Selection Plan. The Court will direct the Clerk to provide the Jury Selection Plan that was in effect at the time grand jurors were summoned in this case.

2. Any temporary Juror Selection Plan or Order utilized to accommodate the ongoing COVID-19 pandemic.

ORDER: The Court has been informed by the Clerk that there has been no temporary Juror Selection Plan or Order used to accommodate the pandemic. The Court therefore DENIES this request as MOOT.

3) Any Divisional or District AO-12 or JS-12 forms created which relate to the Master Jury Wheel and the Qualified Jury Wheel that were used to summon grand or trial jurors in the case. (Title 28 U.S.C. § 1863(a) requires the district courts to submit these forms at the appropriate times.)

1   ORDER: The Court GRANTS this request. The Court is informed that Defendant

2   has the 2018 and 2019 AO-12 forms and will direct the Clerk to provide any other

3   AO-12 forms that may exist that are responsive to the request.

4   4) Any other statistical or demographic analyses produced to ensure the quality of

5   the Master Jury Wheel and Qualified Jury Wheel used to summon grand jurors in

6   this case, and to ensure those Wheels' complied with applicable law and the

7   Constitution.

8   ORDER: The Court has been informed by the Clerk that there are no statistical or

9   demographic analyses produced other than the AO-12 forms.

10   5) The date when the Master Jury Wheel that was used to summon grand jurors in

11   this case was refilled.

12   ORDER: The Government does not oppose this request but notes it is moot

13   because the information is contained on the AO-12s possessed by Defense counsel.

14   Opp. at 9. On reply, Defendant does not contend that the AO-12s are insufficient to

15   determine the information sought in this request. Thus, Defense counsel either

16   already possesses the information or would obtain the information if any other

17   relevant AO-12 forms are produced pursuant to the Court's order with respect to

18   Request #3. The Court therefore finds this request MOOT.

19   6) The "general notice for public review . . . explaining the process by which

20   names are periodically and randomly drawn," 28 U.S.C. § 1864(a), or confirmation

that Local Civil Rule 83.10 fulfills that obligation in its entirety.

ORDER: The Government does not oppose this request, but states it is moot because this information is available on the Court's public website. Opp. at 10. However, the Court notes that Local Civil Rule 83.10 is no longer in force and is not available on the Court website. *See generally* Civ. L.R.; G.O. #147-J. The Court GRANTS the request and will direct the Clerk to provide the "general notice for public review . . . explaining the process by which names are periodically and randomly drawn" that was applicable on the date when the grand jurors were summoned and/or empaneled in this case, or to confirm that former Local Civil Rule 83.10 fulfilled this obligation in its entirety as of the date when the grand jurors were summoned and/or empaneled in this case.

7) The date when grand jurors were summoned and/or empaneled in this case.

ORDER: The Government does not oppose this request. Opp. at 9. The Court therefore GRANTS this request.

8) The number of persons summoned from the Qualified Jury Wheel to be considered as grand jurors in this case.

ORDER: The Government does not oppose this request to the extent it is sought to challenge the selection of the grand jury in this case. Opp. at 9. The Court therefore GRANTS this request. The Clerk of Court shall provide this information to the extent that this information is retained.

9) The calculations of proportionality as described in Local Civil Rule 83.10(d)(3).

ORDER: The Government opposes the request as a "non-juror selection record." *See* Opp. at 11. The Court disagrees. The former Local Civil Rule 83.10(d)(3) provided that "random selections of names from the master jury wheel, including source lists by data computer personnel, must ensure that each county within the district is substantially proportionately represented in the master wheel in accordance with 28 U.S.C. §1863(b)(3)." Civ. L.R. 83.10(d)(3) (former).  Any calculation of the county proportionality in the master jury wheel is therefore "used by the jury commission or clerk in connection with the jury selection process." 28 U.S.C. § 1867(f). Further, it could potentially support either a challenge under the JSSA based upon a substantial deviation from the Court's Jury Selection Plan or a fair cross section claim.  *E.g.*, *United States v. Holmes*, No. 18-CR-00258-EJD-1, 2020 WL 5408163, at \*6 (N.D. Cal. Sept. 9, 2020); *United States v. Cloud*, No. 1:19-CR-02032-SMJ-01, 2020 WL 4381608, at \*3 (E.D. Wash. July 27, 2020). The Court therefore GRANTS the request insofar as the Clerk's Office retains such information with respect to the master jury wheel from which Defendant's grand jury was drawn; however, the Clerk's Office shall not be required to undertake any new calculations.  *See United States v. Corbett*, No. 20-CR-213(KAM), 2020 WL 5803243, at \*9 (E.D.N.Y. Aug. 21, 2020)*, reconsideration denied*, No. 20-CR-213(KAM), 2020 WL 5802315 (E.D.N.Y. Sept. 29, 2020); *United States v.*

20cr2667-GPC

*Fitzgerald*, No. 1:17-CV-00506, 2021 WL 1206556, at *3 (D. Md. Mar. 31, 2021).

10) The calculations of proportionality as described in the Local Civil Rule 83.10(e)(7)(A).

ORDER: The Court GRANTS this request with respect to the qualified jury wheel to the same extent as Request #9.

11) The Master Wheel as described in Local Civil Rule 83.10(d), in electronic and accessible form.

ORDER: Several of Defendant's requests seek personal identifying information of the jurors pursuant to a protective order. *See* Mot. at 13. Although Defendant maintains that such information is necessary for his expert to track jurors through different data sets, this is inconsistent with the declaration previously filed by the expert, *see* ECF No. 24-1 ¶¶ 7, 13 –15, and many courts that have considered this issue have refused to permit disclosure of personally identifying information. *E.g.*, *United States v. Todd*, No. 20-CR-256 (KAM), 2020 WL 5981673, at *3 (E.D.N.Y. Oct. 8, 2020); *Fitzgerald*, 2021 WL 1206556, at *3; *Cloud*, 2020 WL 4381608, at *5–6; *United States v. Shader*, 472 F. Supp. 3d 1, 4 (E.D.N.Y. 2020). The Court finds that personal identifying information such as the juror's name, address, and exact date of birth is unnecessary for the preparation of Defendant's motion.

Defendant alternatively requests "that the materials be redacted to show

11

Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, County, and Zip Code," and describes this as "the minimum information Mr. Martin needs to do his work effectively." ECF No. 35 at 10. The Court finds that such information may be necessary to the preparation of a motion that challenges the procedures under the JSSA or that presents a fair cross section of the community claim. Contrary to the Government's suggestion, Defendant need not present an articulable claim before gaining access to these materials. *See Beaty*, 465 F.2d at 1382; *cf. Todd*, 2020 WL 5981673, at *4 (granting similar request); *Shader*, 472 F. Supp. 3d at 6 (same); *Holmes*, 2020 WL 5408163, at *5 (same).

    The Court therefore GRANTS in part and DENIES in part Defendant's request. The Court will direct the Clerk to produce the master jury wheel from which the grand jury that returned the indictment in Defendant's case originated, subject to redactions of the juror's name, address, date of birth (other than year), and any other personal identifying information excluding "Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, County, and Zip Code."

12) The Qualified Jury Wheel as described in Local Civil Rule 83.10(e), in electronic and accessible form.

ORDER:  The Court GRANTS in part and DENIES in part this request to the same extent as Request #11. The Court will direct the Clerk to produce the qualified jury wheel from which the grand jury that returned the indictment in Defendant's case

originated, subject to redactions of the juror's name, address, and any other personal identifying information excluding "Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, County, and Zip Code."

13) Status Codes for potential jurors who were selected from the Master Jury Wheel for qualification but either had their qualification form returned by the postal service, did not respond, or were disqualified or exempted from jury service. The data should be in electronic and accessible form. For each juror, the data should include whether the form was returned Undeliverable, whether the form was Not Returned, and Reason for Disqualification.

ORDER: The Government contends that this information would not be relevant to a motion under 28 U.S.C. § 1867.  However, this information could potentially demonstrate whether the District's juror selection processes cause jurors from particular groups to be disproportionately disqualified or excused from jury service, or whether any differences are instead due to response rates.  *See Todd*, 2020 WL 5981673, at *5 (granting similar request); *Fitzgerald*, 2021 WL 1206556, at *6 (granting request for excuses given by potential jurors).  The information would also be relevant to a claim that the jury selection process substantially fails to comply with the JSSA.  *See Holmes*, 2020 WL 5408163, at *5 (noting how information related to excusal and disqualification could be relevant to a JSSA claim); *cf. United States v. Erickson*, 75 F.3d 470, 477 (9th Cir. 1996)

13

1  (noting that the JSSA's goals include "determining disqualifications, excuses,

2  exemptions and exclusions on the basis of objective criteria only.").

3        As for the Government's contention that disclosure of grand jury records is

4  not permitted for a challenge against minor infractions of the JSSA, the Court

5  notes that Defendant will be unable to determine whether any violation is

6  substantial or *de minimis* without access to the underlying information. *Contra*

7  *Diaz*, 236 F.R.D. at 483. The Court accordingly GRANTS the request. The Court

8  therefore will direct the Clerk to provide this information to the extent it is

9  retained, with any personal identifying information redacted.

10  14) All persons and their juror status for persons whose juror summons and

11  qualification form were not returned or returned as undeliverable.

12  ORDER: The Court GRANTS the request for the reasons outlined above as to

13  Request #13. The Court therefore will direct the Clerk to provide this information

14  to the extent it is retained, with any personal identifying information redacted.

15  15) All persons summoned to appear in the Clerk's Office to complete a personal

16  interview with the clerk as described in Local Civil Rule 83.10(d)(7)(C).

17  ORDER: The Court has been informed that the Clerk's Office does not summon

18  individuals to appear for a personal interview.

19  16) All persons selected as potential grand jurors in this case.

20  ORDER: The Government opposes this request to the extent Defendant seeks the

information of persons actually selected as grand jurors in this case, and notes that otherwise request is duplicative of Request #12. Opp. at 14. Defendant replies that he does not contend that this data alone would support a JSSA challenge but is requesting this data is to conduct an accuracy check to determine whether the Clerk's Office provided master and qualified wheel data for the wrong year. ECF No. 35 at 12. The justification offered for the data appears to be only tangentially related to the preparation of Defendant's motion and thus not information that "may be necessary" to the preparation of a motion. Given that the defendant is not entitled to a grand jury that reflects a fair cross section of the community, the Court DENIES this request.

17) The sources of data in electronic form for the Master Jury Wheel used to summon grand jurors in this case as described in Local Rule 83.10(d)(1)–(2).

ORDER: The Court finds this information, to the extent it is retained by the Clerk's Office, qualifies as a record used by the Clerk in connection with the jury selection process that may be necessary for the preparation of a motion challenging the creation of the master wheel.  18 U.S.C. § 1867(f); *cf. United States v. Eldarir*, No. 20-CR-243 (LDH), 2020 WL 6545894, at *5 (E.D.N.Y. Nov. 6, 2020) (granting similar request); *Shader*, 472 F. Supp. 3d at 6 (same); *Cloud*, 2020 WL 4381608, at *5 (same).  The Court therefore GRANTS the request, subject to the restrictions on revealing personal identifying information noted above.

18) The juror qualification and/or summons forms for persons summoned to potentially become grand or trial jurors in this case.

ORDER: The Court finds that the disclosure of this information, with appropriate protection of personal identifying information, is consistent with 18 U.S.C. § 1867(f). The Court disagrees with the Government that the information is protected from disclosure under Federal Rule of Criminal Procedure 6(e), as juror qualification forms are used to determine whether an individual will be qualified to serve on a grand jury, prior to any grand jury being impaneled. Opp. at 14; *cf. United States v. Dynavac, Inc.*, 6 F.3d 1407, 1411 (9th Cir. 1993) (citation omitted) (the purpose of Rule 6(e) is "only to protect against disclosure of what is said or takes place in the grand jury room"). The Court thus GRANTS the request for the same reasons as Requests #13 and #14. *See Todd*, 2020 WL 5981673, at *6 (granting similar request); *cf. Hirst v. Gertzen*, 676 F.2d 1252, 1259 (9th Cir. 1982) (noting that returned jury qualification forms could reveal whether intentional discrimination infected selection process). However, the Court is cognizant of the privacy concerns that may arise were these forms to be produced and distributed outside of the Clerk's Office. The Court therefore will direct the Clerk to permit inspection of these forms in the Clerk's Office by Defendant's counsel, subject to the protective order below.

19) Any temporary or alternative juror qualification and/or summons forms

1   utilized to accommodate the ongoing COVID-19 pandemic.

2   ORDER: Defendant agrees with the Government that this request is premature,

3   because the grand jury would not have received qualification or summons forms

4   affected by the pandemic and the jury trial has not yet been scheduled.  Opp. at 14;

5   ECF No. 35 at 7.  The Court therefore considers this request withdrawn.

6   20) The disposition of each summoned grand or trial juror in this case as to

7   excusal, deferment, disqualification or selection.

8   ORDER:  The Court finds this information would be necessary for Defendant to

9   determine whether the post-summons jury selection process substantially failed to

10  comply with the JSSA and would also be relevant to a fair cross-section claim.

11  This information could reveal whether groups were excused, deferred, or

12  disqualified at substantially different rates, which could indicate that the selection

13  process is not sufficiently "random" or fails to substantially comply with the JSSA.

14  The Court therefore GRANTS the request for the same reasons as Requests #13,

15  #14, and #18.  *Cf. Holmes*, 2020 WL 5408163, at *7 (granting similar request);

16  *Todd*, 2020 WL 5981673, at *6 (same).  The Court therefore will direct the Clerk

17  to provide this information to the extent it is retained, with any personal identifying

18  information redacted.

19  21) The attendance record and reason for absence by date for each grand juror.

20  ORDER: The Court notes that the Ninth Circuit in *In re Special Grand Jury* raised

17

the possibility, but refrained from holding, that attendance records and records of
substitutions could "run[] afoul of the doctrine of grand jury secrecy" in the
context of the public right of access to judicial records and outside of the right
afforded to a defendant under § 1867(f). *In re Special Grand Jury (for Anchorage,
Alaska)*, 674 F.2d 778, 782, n.4 (9th Cir. 1982). As such, 28 U.S.C. § 1867(f) may
provide a basis for broader disclosure than what was suggested in that case, given
that the statute provides for the disclosure of records not otherwise available to the
public. 28 U.S.C. § 1867(f). But the limited exception in 28 U.S.C. § 1867(f)
cannot be read so broadly as to swallow the long-standing rule regarding the
secrecy of grand jury proceedings. Indeed, courts have determined that revealing
the names of grand jurors would impinge upon the ability of potential future grand
jurors to deliberate freely or otherwise is protected from disclosure under the grand
jury secrecy doctrine. *See, e.g.*, *Senate of the Com. of Puerto Rico on Behalf of
Judiciary Comm. v. U.S. Dep't of Just.*, 823 F.2d 574, 582 (D.C. Cir. 1987). Here,
Defendant has not provided a particular need for his request as it relates to the
grand jurors' identities.

However, attendance records that are redacted for personal identifying
information—such that Defense counsel can track whether a particular juror was
excused and substituted but not discern her actual identity—would not appear to
run afoul of the policies underlying the grand jury secrecy doctrine. *Accord United*

18

1   *States v. Morrell-Corrada*, Cr. No. 04-160 (PG), 2004 WL 7336971, at *3 (D.P.R.

2   Nov. 9, 2004). Although Defendant is not entitled to a representative grand jury,

3   the composition of the grand jury and reasons for absences would be relevant to

4   determine whether COVID-19 caused the District to deviate from its jury selection

5   plan. The Court therefore GRANTS in part Defendant's request to the extent it

6   seeks attendance records for March 15 through September 1, 2020. The Court will

7   direct the Clerk to provide this information, to the extent it is available, with

8   personal identifying information redacted.

9   22) All persons who were selected to sit on the grand jury but were subsequently

10  replaced, and all persons selected to replace them. The data should include who

11  replaced whom, and whether the replacement juror was selected as an alternate

12  under Local Civil Rule 83.10(e)(7)(a) and/or Federal Rule of Criminal Procedure

13  6(a)(2).

14  ORDER: The Court GRANTS in part Defendant's request for the same reasons as

15  Request #21. The Court will direct the Clerk to provide this information, to the

16  extent it is available, with personal identifying information redacted.

17  23) Any communications with grand jurors related to the COVID-19 pandemic.

18  (Mr. Ramirez-Ortiz does not seek any communications that were delivered "before

19  the grand jury" in the meaning of Rule 6(e), but instead seeks communications that

20  were made outside the jury room.)

1    ORDER: The Court finds this request relates to Defendant's theory that COVID-

2    19-related changes to the District's procedures may have disparately impacted

3    jurors or caused deviations from the jury selection plan, and thus appropriately

4    falls under 18 U.S.C. § 1867(f). As to the Government's objection, the Court fails

5    to see how disclosure of precautions taken with respect to COVID-19, subject to a

6    protective order, would risk jeopardizing the grand jurors' ability to deliberate

7    freely and have witnesses testify fully, as the Government suggests. Opp. at 21.

8    The Court therefore GRANTS in part the request and directs the Clerk to provide

9    any such communications that were made with the grand jury impaneled for

10   Defendant's case.

11         **2.  Requests for Grand Jury Materials**

12         Rule 6(e)(3)(E)(ii) holds that "[t]he court may authorize disclosure—at a

13   time, in a manner, and subject to any other conditions that it directs—of a grand

14   jury . . . at the request of a defendant who shows that a ground may exist to dismiss

15   the indictment because of a matter that occurred before a grand jury[.]" Fed. R.

16   Crim. P. 6(e)(3)(E)(ii).

17         Disclosure of grand jury proceedings is available only by court order, and a

18   defendant bears the burden of establishing a "particularized need" or "compelling

19   necessity" for disclosure which outweighs the policy of grand jury secrecy. Fed. R.

20   Cr. P. 6(e); *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222 (1979).

20cr2667-GPC

"To make public any part of [the grand jury's] proceedings would inevitably detract from its efficacy." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959).

"A trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a particularized need exists which outweighs the policy of secrecy." *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (internal citation and quotation omitted). "A defendant's particularized need must be based on more than mere speculation." *United States v. Reed*, 156 F.3d 1241 (9th Cir. 1998) (citing *id.*).

"The proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not." *United States v. Alter*, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973). In the context of "grand jury ministerial records," the Ninth Circuit has recognized a public right, "subject to the rule of grand jury secrecy, of access to the ministerial records in the files of the district court having jurisdiction of the grand jury." *In re Special Grand Jury*, 674 F.2d at 780-81.

Here, Defendant has requested access to "any and all information concerning any *procedural* changes to the grand jury as a result of the COVID-19 pandemic, between January 2020 and the present," including but not limited to: (a) "the charges, instructions, and directions grand jurors have received regarding their

20cr2667-GPC

ability to request witnesses or evidence," (b) "the charges, instructions, and directions grand jurors have received regarding whether there are any limitations on which witnesses or evidence the grand jury may request, e.g., whether they are permitted to call non-government witnesses," (c) "the charges, instructions, or directions grand jurors received for the process by which they may call non-government witnesses during the pandemic," (d) "a transcript of the instructions given in his case," (e) "whether witnesses testify in person, over video or teleconference, or both," (f) "whether video teleconferencing or teleconferencing is utilized in any other way for grand jury proceedings," and (g) "what precautions are taken to protect live witnesses before the grand jury from spreading or contracting the virus." Mot. at 17.

### Charges, Instructions and Directions Grand Jurors received

In requests (a), (b), (c) and (e), Defendant requests charges, instructions, and directions grand jurors received regarding (a) their ability to request witnesses or evidence; (b) whether there are any limitations on which witnesses or evidence the grand jury may request; (c) the process by which they may call non-government witnesses during the pandemic; and (e) whether witnesses may testify in person, over video or teleconference, or both. The United States opposes each request on the grounds that Defendant seeks information concerning matters occurring before the grand jury, which are presumed secret pursuant to Rule 6(e). Opp. at 25-27.

While the proceedings before the grand jury are secret, "the grounds rules by which the grand jury conducts those proceedings are not." *Alter*, 482 F.2d at 1029 n.21. Accordingly, the defense is entitled to impaneling instructions given to the grand jury by the court at the time it was impaneled. Further, defendant is entitled to any supplemental or modifying instructions. *United States v. Gibbs*, No. 20-CR-2237-BTM, ECF No. 34 (S.D. Cal. Jan 25, 2021) (if defendant is entitled to initial impaneling instructions, by reasonable extension, he is entitled to supplemental instructions.)

Accordingly, the Court concludes that Defendant is entitled to (i) the May 14, 2020 letter from the Chief Judge to the grand jury, and its attachment, (ii) any written supplements thereto, and (iii) any general non-case specific instructions by an Assistant U.S. Attorney as to the procedures of the grand jury proceedings during the COVID-19 pandemic—including any general instructions relating to the grand jury's ability to call witnesses and request evidence—made to this specific impaneled grand jury, from May 20, 2020 to the day of the indictment. This will not be unduly burdensome for the Government given the limited time frame implicated in this case, as grand jury proceedings were suspended from March 17, 2020 to May 20, 2020, and Defendant was indicted on September 1, 2020.

However, Defendant is not entitled to any case-specific instructions by an Assistant U.S. Attorney to the grand jury as to their ability to call witnesses and

23

1    request evidence given that Defendant has not demonstrated a non-speculative

2    particularized need. *See United States v. Stepanyan*, No. CR 15-0234 CRB (JSC),

3    2016 WL 4398281, at *2 (N.D. Cal. Aug. 18, 2016) ("courts have uniformly

4    rejected the argument that the government's . . . remarks to the grand jury are not

5    entitled to secrecy").

6              <u>The transcript of Instructions Given in Defendant's Case</u>

7         Defendant requests "a transcript of the instructions given in this case." (Mot.

8    at 17.) The Government opposes this request "as it seeks matters occurring before

9    the grand jury, which are presumed secret under Rule 6(e)." Opp. at 27. While the

10    Ninth Circuit has not decided the issue of whether legal instructions to a grand jury

11    are afforded a presumption of secrecy, district courts have split on the issue.

12    *Compare United States v. Morales*, Cr. No. S-05-0443 WBS, 2007 WL 628678, at

13    *4 (E.D. Cal. Feb. 28, 2007) ("defendant suggests that he need not make a showing

14    of particularized need at all, because the instructions are not covered by grand jury

15    secrecy. . . . [*Alter*] provides little support for defendant's claim that the

16    prosecutor's legal instructions are similarly not covered by grand jury secrecy.")

17    with *United States v. Belton*, No. 14–cr–00030–JST, 2015 WL 1815273, at *3

18    (N.D. Cal. Apr. 21, 2015) ("The legal instructions given to the grand jury

19    regarding the charges on which they are deliberating are a part of the 'ground

20    rules' by which the grand jury conducts its proceedings.").

1    Ultimately, it is the substance of the instructions that will determine whether

2    the legal instructions provided by the prosecutor to the grand jury are the kind of

3    ground rules subject to disclosure, or whether they go to the substance of the grand

4    jury's deliberation and are therefore afforded a presumption of secrecy.  Following

5    the procedure employed by Judge Barry Ted Moskowitz in *United States Gibbs*,

6    the Court will conduct an *in camera* review of the transcript of the grand jury

7    proceedings in this case so that it can determine whether disclosure of the

8    transcript of the instructions in this case is appropriate.

9    <u>Information re: Precautions and Utilization of Teleconferencing</u>

10    Defendant requests information regarding "whether video teleconferencing

11    or teleconferencing is utilized in any other way for grand jury proceedings." Mot.

12    at 17. Defendant also seeks information regarding "what precautions are taken to

13    protect live witnesses before the grand jury from spreading or contracting the

14    virus." Mot. at 17. The Government responds that all grand jury testimony in this

15    case was conducted in-person. Opp. at 27. Further, the Government argues that

16    Defendant has failed to offer any authority to overcome the presumption that the

17    grand jury properly performed it duties.

18    The Court finds that the requests are MOOT and, otherwise, to the extent

19    that Defendant seeks the additional grand jury information, he has failed to show

20    that the information would be relevant to a motion to dismiss the indictment or that

25

1   he is entitled to the information.

2   **D. CONCLUSION**

3          For the foregoing reasons, Defendant Ramirez' Motion for Access to

4   Records is **GRANTED IN PART** and **DENIED IN PART**. Further, the motion

5   for grand jury discovery is **GRANTED IN PART** and **DENIED IN PART**.

6          The Court directs the Government to produce to Defendant the impaneling

7   instructions given to the grand jury in this case at the time it was impaneled on

8   November 19, 2019. Also, the Government is to produce to Defendant the

9   supplemental grand jury instructions given to the grand jurors by way of the May

10  14, 2020 Letter by the Chief Judge and its attached COVID-19 Precautions, and

11  any written supplement thereto. Next, the Government is to produce to Defendant

12  any general instructions by an Assistant U.S. Attorney to the impaneled grand jury

13  of this case, from May 20, 2020 to the day of the indictment on September 1, 2020,

14  as to procedures before the grand jury in response to the COVID-19 pandemic—

15  including general non-case specific instructions relating to the grand jury's ability

16  to call witnesses and request evidence. The Court will find it sufficient for an email

17  to be sent by the prosecutor in this case to any Assistant U.S. Attorney who

18  presented cases before this grand jury during the identified time period, asking

19  whether they gave this grand jury any general instructions on how they would

20  proceed in light of the COVID-19 pandemic, including instructions on jurors'

ability to call witnesses and request evidence. If an Assistant U.S. Attorney replies in the affirmative, the transcript of those instructions must be obtained and be provided to the defense counsel. To the extent the Government believes any instructions are case-specific as opposed to general instructions, the Government may submit them to the Court for *in camera* review.

Further, the Court directs the Clerk to provide the JSSA information identified above within four weeks of the date of this Order. Defense counsel shall confer with the Clerk's Office to make arrangements to review the materials requested in Request #18.

The JSSA materials disclosed pursuant to this order shall be subject to the following protective order:

1. The materials may be used only by counsel, their legal staff and experts in connection with the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures and may not be disclosed. The materials may not be used for purposes of jury selection, trial, or any other matter other than the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures.

2. The materials either must be returned to the Court at the commencement of jury selection, or counsel, their staff, and their experts and consultants must certify that the materials have been destroyed and that no materials

20cr2667-GPC

1    have been retained in any duplicative form.

2    3. The Clerk of the Court shall file a SEALED copy of the records on the

3    docket for purposes of maintaining a record of the production.

4    4. Consistent with 28 U.S.C. § 1867(f), the materials may not be disclosed,

5    shown or distributed in any manner to third parties, except experts and

6    consultants. Similarly, the materials may only be disclosed to individuals

7    who have a need to view the materials "as may be necessary in the

8    preparation or presentation of" a motion to dismiss on the ground of

9    "substantial failure to comply with the provisions of this title in selecting the

10   grand or petit jury." 28 U.S.C. § 1867.

11   5. Defendant shall not possess the materials at any time, except when

12   reviewing the materials with counsel. The materials may not be carried into

13   or reviewed in any detention facility or residence of the defendant. The

14   materials may be reviewed by defendant, if in custody or under home

15   detention, by whatever approved arrangements can be made with the Bureau

16   of Prisons or Pretrial Services to facilitate any such review, including video

17   or audio conference procedures that have been utilized during the current

18   COVID-19 pandemic.

19   6. Every attorney who accesses the materials is personally responsible not

20   only for his or her compliance with this Protective Order, but also his or her

20cr2667-GPC

client's compliance with the requirements of this Protective Order and compliance by any staff member, expert, or other person who is shown the materials consistent with the parameters of this Order.

7. Materials that have been identified as available for review in the Clerk's Office may not be removed from the Clerk's Office. Because these documents may contain personal identifying information, these documents shall not be subject to review by Defendant directly. Counsel shall not record in any manner any personal identifying information that appears in these documents.

8. Counsel, their staff, experts, consultants, defendant, and the government are reminded that "[a]ny person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both." 28 U.S.C. § 1867(f).

**IT IS SO ORDERED.**

Dated:  April 28, 2021

Hon. Gonzalo P. Curiel
United States District Judge

29